IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **J&J SPORTS PRODUCTIONS, INC.,** : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| **LORENZO GONZALEZ et al.,** : | No. 12-6313 |
| Defendants. : | |

**MEMORANDUM**

PRATTER, J.                                                                                                                        NOVEMBER 14, 2013

J&J Sports Productions, Inc. ("J&J Sports") sued Lorenzo Gonzalez, individually and in his capacity as the Stork Hotel, aka Hotel La Ciguena, as well as the hotel (collectively, "the Defendants"), for violation of 47 U.S.C. §§ 553 or 605, which prohibit, respectively, unauthorized interception of cable or satellite transmissions. J&J Sports alleges that it had exclusive nationwide commercial distribution rights to two different boxing matches, which it broadcast through sublicensees, and that the Defendants unlawfully intercepted these programs—i.e., did not pay for a proper license to exhibit them—in violation of one of the two foregoing statutes. J&J Sports also alleges that the Defendants did so willfully. (The statutes provide for increased monetary damages for willful violation. *See* 47 U.S.C. § 553(c)(3)(B) ("In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000."); *id.* § 605(e)(3)(C)(ii) ("In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or

1

statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.").) J&J Sports sets forth its First Amended Complaint (Docket No. 19) in three counts: violation of 47 U.S.C. § 553 (interception by cable) (Count I); violation of 47 U.S.C. § 605 (interception by satellite) (Count II); and conversion (Count III).

In their Answer (Docket No. 20), the Defendants denied interception of the programs. But, "[b]y way of further answer," Defendants averred in two paragraphs that

> Plaintiff is barred under law from seeking damages under both Section 605 and Section 553. By way of further answer, the damages that the Plaintiff is seeking are excessive and the Plaintiff, as an entity, and his counsel has been criticized for doing this. *See J&J[] Sports Production[s], Inc. v. Moody*, [No. 08-5225,] 2009 WL 1515749 (ED. Pa. 2009 [May 28, 2009]).

Answer ¶¶ 25, 30 (Docket No. 4). In another paragraph, responding to J&J's allegation that

> [t]he aforesaid acts of the Defendants were willful, malicious, egregious, and intentionally designed to harm Plaintiff J & J Sports Productions, Inc., by depriving Plaintiff of the commercial license fee to which Plaintiff was rightfully entitled to receive from them, and in doing so, the Defendants subjected the Plaintiff to severe economic distress and great financial loss,

Compl. ¶ 33, the Defendants denied the allegation and stated, "By way further answer, the answering Defendants operate a relatively small 'mom and pop' restaurant/bar in the City of Reading and the legal defenses incurred are a 'severe economic distress and great financial loss to them,'" Answer ¶ 33. In closing, the Defendants raised three affirmative defenses: (1) laches; (2) an argument that the Defendants were not "put on notice of Plaintiff's purported property rights in said 'Program,'" such that any interception, if it occurred, "was done innocently and with justification"; and (3) any interception, if it occurred, "was done so with what Answering Defendants believed was a valid license."

J&J Sports moved to strike paragraphs 25, 30, 33, and all three of Defendants' affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f), which provides, in full:

> (f) Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> (1) on its own; or
>
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

FED. R. CIV. P. 12(f). Motions to strike are, as J&J Sports concedes, "somewhat disfavored." Mot. Strike at 5; *see generally* 5C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1382 (3d ed. 2013). But they are also a matter over which "[t]he district court possesses considerable discretion." WRIGHT & MILLER § 1382, *supra*; *see also Snare & Triest Co. v. Friedman*, 169 F. 1, 6 (3d Cir. 1909) ("[T]he granting of the motion to strike out was a matter within the discretion of the court below."); *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp. 2d 623, 633 (M.D. Pa. 2009) ("A decision to grant or deny a motion to strike a pleading is vested in the trial court's discretion."). And here, well within that discretion, the Court will strike certain of the statements discussed below because they are immaterial and impertinent, as well as one of the Defendants' affirmative defenses as insufficient as a matter of law.

J&J Sports argues, first, that the allegations in paragraphs 25 and 30 of the Defendants' Answer are immaterial, impertinent, and scandalous because they "do not pertain to the issues in question and that have no purpose other than to cast a derogatory light on Plaintiff and its counsel." Mot. Strike at 4 (Docket No. 21). As J&J Sports correctly argues, while a plaintiff may not ultimately recover under both 47 U.S.C. § 553 and § 605 because the two causes of action are mutually exclusive, *see TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3d Cir. 2001), "[a]t the motion to dismiss stage, where the plaintiff is permitted to plead alternative theories of liability, [plaintiff's] Complaint can state causes of action under both §§ 553 and 605."

*Joe Hand Promotions, Inc. v. Yakubets*, No. 12-4583, 2013 WL 5224123, at *2 (E.D. Pa. Sept. 17, 2013); *see* FED. R. CIV. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). Defendants' contention is thus immaterial and its statement respecting J&J's counsel impertinent and, as J&J argues, "derogatory." The Court will therefore strike the following words in paragraphs 25 and 30 of Defendants Answer, as well as the citation accompanying them: "By way of further answer, the damages that the Plaintiff is seeking are excessive and the Plaintiff, as an entity, and his counsel has been criticized for doing this."

J&J Sports also argues, second, that Defendants' statement that "[b]y way further answer, the answering Defendants operate a relatively small 'mom and pop' restaurant/bar in the City of Reading and the legal defenses incurred are a 'severe economic distress and great financial loss to them,'" Answer ¶ 33, is "wholly non-responsive to the First Amended Complaint," Mot. Strike at 4. The Court agrees: "A denial must fairly respond to the substance of the allegation." FED. R. CIV. P. 8(b)(2). This statement will also be stricken as plainly unresponsive and irrelevant.

Finally, J&J Sports argues that all three affirmative defenses should be stricken because, first, laches applies in actions at law but not at equity; and, second and third, Defendants' mental state is irrelevant because both § 553 and § 605 are strict liability offenses and whether a defendant's violation was willful is a matter only for the Court's calculation of damages.

While it is true that §§ 553 and 605 are strict liability offenses, and that the plaintiff, who bears the burden of proving his case, must prove that the defendant's violation was willful in order to trigger the court's power to consider, *in its discretion*, whether to award additional

4

damages, *see* 47 U.S.C. §§ 553(c)(3)(B), 605(e)(3)(C)(ii), such that Defendants' averments are not so much affirmative defenses as opposed to denials of a potential element of J&J Sports' alternative causes of action, there is no reason to strike these averments. True, Defendants' second and third "affirmative defenses" are redundant with its denials of liability, as J&J Sports argues. But redundancy is hardly a compelling reason to strike. And J&J Sports' primary argument, that it will be "prejudice[d]" "[i]f the defenses are permitted to survive," because it "will be compelled to expend time and resources litigating irrelevant issues," Mot. Strike at 8, is baseless because even when the second and third affirmative defenses are instead read, properly, as denials of an element of either § 553 or § 605, Defendants would still be able to conduct discovery—as would J&J Sports—regarding whether their alleged violations were willful. And further, common sense suggests that a defendant is less likely to be concerned with liability under § 553 or § 605 per se than with whether he will have to pay a certain sum in damages.

The laches defense, by contrast, presents a more interesting question. If laches can apply in this suit (as a matter of law), then it is inappropriate to dismiss the laches defense at this stage, as it would raise factual questions. J&J Sports argues that because its claims are legal rather than equitable, laches cannot apply.

As a matter of federal law, however, whether laches may apply as a defense to bar an action at law is currently unsettled and may well be decided, or at least clarified, by the Supreme Court this Term in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, No. 12-1315 (U.S.).[1] Until the Supreme Court renders that decision, this Court notes, there is a split of authority, *see* Petition

---

[1] Docket at http://www.supremecourt.gov/Search.aspx?FileName=/docketfiles/12-1315.htm; question presented at http://www.supremecourt.gov/qp/12-01315qp.pdf.

for a Writ of Certiorari, *Petrella*, No. 12-1315 (U.S. Apr. 30, 2013),[2] regarding whether laches can apply to congressionally created causes of action—and, more specifically, whether laches may apply to a "to a statute for which Congress has provided a limitations period," *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 798 (4th Cir. 2001). And even if laches does not apply to certain federal causes of action, it may be because, apart from historical notions of law versus equity, "[s]eparation of powers principles . . . preclude [courts] from applying the judicially created doctrine of laches to bar a federal statutory claim that has been timely filed *under an express statute of limitations*." *Lyons P'ship*, 243 F.3d at 798 (emphasis added). Sections §§ 553 and 605, by contrast, are subject to no explicit statute of limitations, so Congress cannot be said to have spoken on the matter. *See Kingvision Pay-Per-View, Corp., Ltd. v. 898 Belmont, Inc.*, 366 F.3d 217, 219 (3d Cir. 2004) ("Once again, we must determine what statute of limitations to apply when a federal statute does not specify a limitations period. . . ." (discussing §§ 553 and 605)). This Court will therefore decline to strike the laches defense with regard to §§ 553 and 605.

But the Court *will* strike laches as an affirmative defense to J&J Sports' conversion claim. Regardless of the current uncertainty within federal law, the relevant state law is well settled. The Court assumes, for sake of argument at this stage, that the conversion claim is appropriately brought under either Pennsylvania or California law (J&J Sports is a California corporation and Defendants are Pennsylvania citizens). In both jurisdictions, conversion is a claim at law. *See, e.g.*, *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. Ct. 1987) ("Conversion is an action at law and is, therefore, subject to the two-year statute of limitations."); *Bufano v. City & County of San Francisco*, 43 Cal. Rptr. 223, 228 (Dist. Ct. App. 1965) ("Conversion is an action at law

---

[2] *Available at* http://sblog.s3.amazonaws.com/wp-content/uploads/2013/08/Petrella-v-MGM-filed-cert-petn-w-app.pdf.

subject to jury determination."). And in both jurisdictions, laches cannot apply to bar an action at law. *See, e.g.*, *Shonberger*, 530 A.2d at 115 ("[L]aches is an equitable doctrine not assertable in an action at law. In effect, laches is an equitable version of the statute of limitations. The two concepts are, therefore, mutually exclusive and the lower court erred in applying laches to this action at law." (citations omitted)); *Pa. Tpk. Comm'n v. Atl. Richfield Co.*, 375 A.2d 890, 891-92 (Pa. Commw. Ct. 1977) ("[T]his action was brought in assumpsit, an action at law, and it is settled beyond reasonable dispute that the equitable defense of laches cannot be invoked to deprive a party of his rights at law. Therefore, to the extent that ARCO's motion for summary judgment raises the defense of laches, it is dismissed."), *aff'd*, 394 A.2d 491 (Pa. 1978); *Connolly v. Trabue*, 139 Cal. Rptr. 3d 537, 545 (Ct. App. 2012) ("[T]his was an action at law, not equity, and it is well-established, both in California and generally, that laches applies to equitable actions, not actions at law."); *Adler v. L.A. Unified Sch. Dist.*, 159 Cal. Rptr. 528, 533 (Ct. App. 1979) ("[T]he defense of laches may be asserted only in equity and therefore does not apply to this cause of action for damages."). Thus, Defendants' first affirmative defense, laches, will be stricken with respect to J&J Sports' conversion claim.

For the foregoing reasons, the language discussed above in paragraphs 25, 30, and 33 of Defendants' Answer, as well as their first affirmative defense, laches (but with regard only to J&J Sports' conversion claim), will be stricken.

An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge